IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ELIZABETH COX, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Civil Action No.: 2:14-cv-00962-RDP |
| } | |
| CAROLYN W. COLVIN, } | |
| Acting Commissioner of Social Security, } | |
| } | |
| Defendant. } | |

## MEMORANDUM OF DECISION

Plaintiff, Elizabeth Cox, brings this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental Security Income ("SSI"). *See also* 42 U.S.C. § 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

This action arises from Plaintiff's application for SSI which she filed September 1, 2010, alleging that her disability began that same day. (Tr. 118, 170). On February 22, 2011, Plaintiff's SSI application was denied by the Social Security Administration. (Tr. 118-25). Plaintiff requested and received a video hearing on October 2, 2012. At the hearing, Plaintiff appeared in Birmingham, Alabama and testified before Administrative Law Judge Ben Barnett (hereinafter "ALJ"), who presided over the hearing from St. Louis, Missouri. (Tr. 39, 77). Mary House Kessler, an impartial Vocational Expert, also appeared at the hearing. (Tr. 39, 77). In his decision issued, October 22, 2012, the ALJ determined that Plaintiff was not disabled under the

Act from Plaintiff's alleged onset date, September 1, 2010, through the date of his decision. (Tr. 48).

On April 12, 2013, almost six months after the ALJ's decision, Plaintiff received a psychological evaluation from her treating psychiatrist, Dr. Artie Nelson.[1] (*See* Supp. Tr. 764-765). In a report connected to that assessment, Dr. Nelson opined that Plaintiff experiences "marked" limitations with respect to her ability to understand, remember, and carry out simple instructions, and in her ability to make complex work-related decisions. (Supp. Tr. 764). Further, Dr. Nelson opined that Plaintiff suffered from "extreme" limitations with respect to her ability to understand, remember, and carryout complex instructions, as well as, in in her ability to make simple work-related decisions. (Supp. Tr. 764). Dr. Nelson also opined that Plaintiff suffered from a "marked" impairment in her ability to interact appropriately with co-workers, and "extreme" impairments in her ability to interact with the public and supervisors, as well as, in her ability to respond to changes in her work environment. (*See* Supp. Tr. 765). In his report, Dr. Nelson indicated that these limitations dated back to June 10, 2011. Plaintiff submitted this assessment to the Appeals Council to supplement her request for review of the ALJ's decision. (*See* Pl.'s Mem. at 346, Supp. Tr. 764-766).[2]

On March 28, 2014 the Appeals Council denied Plaintiff's request for review (Tr. 1-6), and that rendered the ALJ's decision final and, therefore, a proper subject of this court's appellate review. *See* 20 C.F.R. §§ 404.981, 422.210(a). The Appeals Council acknowledged

---

[1] Dr. Nelson's notes from June 2010 to September 2012 exist in the medical record. (*See* Tr. 668-709).

[2] In addition to Dr. Nelson's Mental Source Statement (Supp. Tr. 764-66), Plaintiff submitted other evidence to the Appeals Council. (*See* Pl.'s Mem. at 346-48, Tr. 707-709, Supp. Tr. 710-766). Upon consideration, the Appeals Council included some of Plaintiff's additional evidence in the record (*see* Tr. 5-6), but found most of the additional evidence chronologically irrelevant or duplicative, and immaterial; therefore, the Appeals Council determined that there was not a basis to include most of the evidence. (*See.* Tr. 1-2). Here, Plaintiff alleges error only with respect to the exclusion of Dr. Nelson's Mental Source Statement, thus waiving all challenges to the Appeals Council's treatment of Plaintiff's other evidence submitted for review.

Plaintiff's additional evidence, but concluded that because it post-dated the ALJ's decision and provided an analysis of Plaintiff's condition at a later time, the records from the evaluation did not affect the ALJ's decision about whether Plaintiff was disabled on or before September 1, 2010. (Tr. 2).

**II.   Facts**

At the time of Plaintiff's hearing, Plaintiff was fifty-two years-old and had the equivalent of a high school education. (Tr. 170). Plaintiff previously worked as a laborer, sales representative, survey taker, cashier, telemarketer, buffet attendant, and server. (Tr. 88, 112, 194, 199).  She alleges a disability beginning on September 1, 2010, due to Attention Deficit Hyperactivity Disorder (ADHD), depression, diabetic neuropathy, an anxiety disorder, depression, and pain in her feet. (Tr. 170, 192).

The medical evidence of record during the relevant time period contains a note dated September 3, 2010 from Dr. Galioto, indicating that Plaintiff had been diagnosed with generalized anxiety disorder and ADHD and was prescribed Adderall and Xanax. (Tr. 349)

On October 20, 2010, Dr. Pierce of Birmingham Health Care Center noted Plaintiff presented a history of uncontrolled diabetes mellitus ("DM"), complained of numbness and pain in her feet, and reported that she had lost all of her medications. (Tr. 395-96). Dr. Pierce noted that Plaintiff was non-compliant with respect to her DM medications, diet, and exercise, and that Plaintiff had a poor understanding of her illness. (Tr. 395). Plaintiff indicated that she was seeing a psychiatrist for treatment, and Dr. Pierce observed that her anxiety was "much improved." (Tr. 395-96).  Dr. Pierce's evaluation notes from December 7, 2010, reflect that Plaintiff had an unstable home situation and was unable to develop a routine to consistently take her medications.

(Tr. 479). Plaintiff continued to receive primary care at Birmingham Health Care Center throughout 2011 and 2012. (Tr. 467-76, 600-18, 639-58).

On December 14, 2010, at the request of the Social Security Administration ("SSA"), Plaintiff presented for a consultative examination with Dr. Shepard. (Tr. 435-41). After reviewing Plaintiff's medical records and performing a physical examination, Dr. Shepard diagnosed Plaintiff with uncontrolled DM type two, with evidence of peripheral neuropathy, and left wrist pain that followed a non-union left wrist fracture. (Tr. 435-41). Dr. Shepard observed that Plaintiff had "pressured speech and was somewhat tangential," with difficulty staying focused and following instructions. (Tr. 439-40). On January 24, 2011, again at the request of the SSA, Plaintiff presented for a consultative psychological exam conducted by Dr. Beidleman, who indicated that Plaintiff did not appear to have "full-blown" ADHD, and diagnosed Plaintiff with Generalized Anxiety Disorder, Dysthymic Disorder with late onset, and possible Borderline Personality Disorder. (Tr. 442-45). Dr. Beidleman noted that while Plaintiff could remember simple instructions, she may not interact well with coworkers and supervisors. (Tr. 445).

On June 4, 2011, Plaintiff visited the emergency room at St. Vincent's Medical East after injuring her left hand. (Tr. 517). She complained of related pain and swelling. (*Id.*). X-rays taken that day showed a deformity of the distal metacarpal and a possible acute fracture. (Tr. 522). Plaintiff was transferred to Cooper Green Hospital, where additional x-rays showed a non-displaced acute fracture of the left hand and an old non-united fracture of the left wrist. (Tr. 546). Plaintiff was seen in the orthopedic clinic on June 8, 2011. (Tr. 547).

From June 2011 through September 2012, Plaintiff received psychiatric care from Dr. Artie Nelson. (Tr. 668-703, 709). Dr. Nelson noted that Plaintiff was prescribed multiple medications for previous diagnoses of Depression, ADHD, Bipolar Disorder, and Mood Anxiety

4

Disorder. (Tr. 705). Dr. Nelson conducted multiple mental status assessments, which indicated Plaintiff's "fluctuating" attention. (Tr. 670, 672, 679, 682, 685).

Plaintiff received counseling services at Gateway from November 2011 to January 2012. (Tr. 578-99). An intake form noted that Plaintiff had difficulty staying on subject and that her responses seemed distracted and dramatic. (Tr. 578). Plaintiff described a long history of abuse and trauma as a child and adult. (Tr. 578, 586). The counselor noted Plaintiff exhibited inappropriate mental status features in areas of motor activity, attention, speech, mood, affect, thinking, and insight. (Tr. 578). Plaintiff was diagnosed with chronic Post-Traumatic Stress Disorder, Mood Disorder, and sustained Polysubstance Abuse in full remission. (Tr. 587). On January 23, 2012, Plaintiff was discharged from counseling due to a lack of transportation to attend appointments and a lack of finances. (Tr. 599).

At her hearing on October 2, 2012, Plaintiff testified she is unable to work because of mental health problems, including ADHD and anxiety. (Tr. 89, 98). Plaintiff testified that she suffered from episodes of uncontrollable crying three to four times a week, which lead to four or five panic attacks a month. (Tr. 89, 98). Plaintiff testified that these attacks interfere with her concentration and memory, and indicated that, while attempting vocational rehabilitation, she had difficulties remembering and following instructions. (Tr. 91-92).

Further, Plaintiff testified that her uncontrolled diabetes, with blood sugar levels between 378 to 400mg/dL, causes neuropathy in her legs and feet, affecting her ability to stand for long periods of time. (Tr. 94). Plaintiff estimated that she could perform an activity while standing for 25 to 30 minutes before needing a break, and that she could walk without stopping for two or three blocks. (Tr. 95-96). Plaintiff also testified that after breaking her hand twice she sometimes has difficultly lifting heavy items and closing her hand. (Tr. 108).

When questioned by the ALJ, Plaintiff testified that she was fired from her last job as a salesperson, because she was unable to sell enough products. (Tr. 101). Plaintiff further testified that she tried to work at a buffet after losing her sales job, but that she was let go because of the pain in her feet.  (Tr. 101). Plaintiff testified that she no longer engages in past hobbies, but that she is able to cook and clean without assistance. (Tr. 102). Plaintiff admitted that she had been noncompliant with her diabetic injections, and explained that her noncompliance was due to marks, ulcers, and recurring infections at the injection sites. (Tr. 106-107). Plaintiff testified that, at the time of the hearing, she was compliant with her prescribed DM treatment. (Tr. 106).

At Plaintiff's hearing, Dr. Kessler, a Vocational Expert, testified that an individual, similarly situated to Plaintiff in all relevant aspects, could not perform Plaintiff's past work, but such an individual would be able to work in other positions available in significant numbers within the national economy. (Tr. 114).

### III.    The ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Work activity involving significant physical or mental activities is "substantial," while "gainful" work is done for pay or profit. *See* 20 C.F.R. § 404.1572(a)-(b). A claimant is presumed to have the ability to engage in substantial gainful activity when her earnings from employment rise above the amount allowed under 20 C.F.R. §§ 416.974, 416.975. A claimant cannot claim disability if found to engage in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment, or combination thereof, that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the

claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not meet the listed criteria, the ALJ may still find disability, after completing a claimant's residual functional capacity ("RFC") assessment. 20 C.F.R. § 404.1520(e). Based on this RFC assessment, the ALJ determines whether the claimant can perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Should the ALJ find that the claimant is capable of performing past relevant work, the claimant is deemed not disabled. *Id.* However, if the ALJ finds that the claimant cannot perform past relevant work, then the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g). At this stage of the analysis the burden shifts to the ALJ to prove that, given a claimant's RFC, age, education, and work experience, a claimant is capable of making a successful adjustment to other jobs, which are available in substantial numbers within the national economy. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

In the present case, after considering the record in its entirety (as it existed at the time), the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 1, 2010. (Tr. 41). The ALJ found that Plaintiff suffered from a combination of severe impairments, including Diabetes Mellitus with neuropathy, Generalized Anxiety Disorder, Dysthymic Disorder, and possible Borderline Personality Disorder.[3] (Tr. 41). However, the ALJ determined that Plaintiff's impairments, individually or in combination, neither met nor medically equaled

---

[3] The ALJ determined that the evidence regarding Plaintiff's impairments of a left wrist fracture and hypertension indicated that these impairments were non-severe. (Tr. 41)

7

Listings 9.00,[4] 12.04, 12.06, or 12.08. *See* 20 C.F.R. § 404.1520(a)(4)(iii). (Tr. 42). The ALJ found that Plaintiff failed to satisfy the "Paragraph B" requirements of Listings 12.04, 12.06, and 12.08, as well as the "Paragraph C" requirements of Listings 12.04 and 12.06, and also determined that Plaintiff had no more than moderate impairments, and no episodes of decompensation. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 42)

When assessing Plaintiff's residual functional capacity ("RFC"), the ALJ noted that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible in light of objective medical evidence of record. (*See* Tr. 43-46). The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a range of light, exertional work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), but more narrowly tailored Plaintiff's RFC by adding that Plaintiff is to avoid exposure to hazards, moving machinery, and unprotected heights, and is limited to performing simple, routine, and repetitive tasks, in a stable work environment that involves only superficial interaction with others. (Tr. 43).

The ALJ found that though unable to perform past relevant work (Tr. 46), Plaintiff was capable of making a successful adjustment to other jobs that are available in substantial numbers within the national economy. (Tr. 47-48). Accordingly, the ALJ ruled that from September 1, 2010 to October 22, 2012, Plaintiff was not disabled under the Act, and, therefore, was not entitled to disability benefits. (Tr. 48).

## IV.     Plaintiff's Argument For Reversal or Remand

Plaintiff seeks to have the ALJ's decision reversed, or in the alternative, remanded for further consideration. (*See* Pl.'s Mem. at 14). Plaintiff presents two arguments: (1) the Appeals

---

[4] The ALJ determined that Plaintiff did not meet the requirements of Listing 9.00 because she did not have end organ damage consistent with meeting a listing under another body system. (Tr. 42).

Council erred in failing to consider and failing to include in the evidence of record the opinion of Dr. Artie Nelson, and (2) the ALJ erred in failing to properly consider the vocational rehabilitation records in Exhibit 25E. (Pl.'s Mem. at 7).

## V.      Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988), *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982). The Commissioner's findings are conclusive if supported by "substantial evidence." 42 U.S.C. § 405(g); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, nor substitute its judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Considering the final decision as whole, the court may only decide if the decision is reasonable and supported by substantial evidence. *See id.*

Substantial evidence is the relevant evidence "a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). When substantial evidence exists in support of the Commissioner's decision, his decision must be affirmed, even if the evidence preponderates to the contrary. *See Id*. However, the court notes that judicial review, although limited, "does not yield automatic affirmance" of the ALJ's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## VI.  Discussion[5]

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and the proper legal standards were applied.

### A. Dr. Nelson's Medical Source Opinion Is Immaterial and Was Appropriately Excluded From the Evidence of Record

Plaintiff argues that the Appeals Council failed to consider Dr. Nelson's medical source opinion dated April 12, 2013, and that this failure warrants reversal, or in the alternative, remand. (Pl.'s Mem. 7).  Plaintiff's argument falls short.

When a claimant takes issue with the Appeals Council's evaluation of new evidence, the court may properly review the new evidence to determine whether the evidence warrants further consideration. *Fry v. Massanari*, 209 F. Supp. 2d 1246, 1252 (N.D. Ala. 2001)(*citing Keeton v. Dep't of Health & Human Servs.*, 21 F. 3d 1064, 1067-68 (11th Cir. 1994)). The Appeals Council is only required to consider new evidence that is both material and relevant. 20 C.F.R. § 404.970(b); *see Keeton,* 21 F.3d at 1066. New evidence is relevant if it relates to the period on or before the date of the ALJ's hearing, 20 C.F.R. § 404.970(b); *see Keeton,* 21 F.3d at 1066, and material if there is a "reasonable possibility" that it would change the administrative outcome. *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).

Here, the Appeals Council found that Dr. Nelson's progress notes from January 2013 to December 2013 did not relate to the time on or before October 22, 2012, and therefore were immaterial. (Tr. 2). While conceding that the Appeals Council is correct in its evaluation of most of Plaintiff's new evidence, Plaintiff argues that the Appeals Council erred with respect to Dr.

---

[5] Although at the administrative level Plaintiff claimed physical and mental impairments, on appeal, she refers only to her alleged mental impairments. (*See* Pl's Br. at 7-14). Accordingly, Plaintiff has abandoned any claim with respect to any purported physical impairments. *See Hernandez v. Comm'r of Soc. Sec.*, 433 F. App'x 821, 823 (11th Cir. 2011).

10

Nelson's Medical Source Statement ("Statement") that indicated that the limitations found in his opinions were first present in June 2011. (Pl.'s Mem. at 9; *See* Supp. Tr. 347). *Cf. Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 823-33 (11th Cir. 2011) (discrediting subsequent diagnoses that do not expressly state they apply to the disability period when the diagnoses conflict with evidence of record). However, any error with respect to the Appeals Council's determination that Dr. Nelson's Statement was chronologically irrelevant, is harmless at best. *See Caldwell v. Barnhart*, 261 F. App'x 180, 190 (11th Cir. 2008) ("When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand."); *Mansfield v. Astrue*, 395 F. App'x 528, 530-31 (11th Cir. 2010); *and see Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011)(indicating that when new evidence's probative value was "slight and did not render denial of benefits erroneous," remand was not required).

Dr. Nelson's Statement indicated that Plaintiff had marked limitations in her ability to understand, remember and carry out simple instructions, make complex-work related decisions, and interact appropriately with co-workers. (Supp. Tr. 764-65). The Statement also indicated Plaintiff had extreme limitations in her ability to understand, remember, and carry out complex instructions, make simple work-related decisions, interact appropriately with the public and supervisors, and respond appropriately to usual work situations and changes in the routine work environment. (*Id.*). These severe limitations assigned to Plaintiff by Dr. Nelson are inconsistent with his own treatment records and the rest of the objective medical evidence of record. (Tr. 667-703). *See* 20 C.F.R. § 416.927(c); *Crawford v. Comm'r of Social Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004)(upholding a finding that the ALJ properly discounted a medical opinion which was inconsistent with the medical source's own treatment notes, unsupported by the medical

11

evidence, and based primarily on Plaintiff's subjective complaints.).  Dr. Nelson's own treatment records indicate that Plaintiff's condition was, at most, moderate. (Tr. 45, 667-703). Between June 2011 and October 2012, Dr. Nelson never rated the severity of Plaintiff's anxiety, depression, attention, nor mood liability as more than moderate, and by January 2012 Dr. Nelson no longer rated the severity of Plaintiff's depression nor her anxiety. (Tr. 669-70, 678-79, 681, 684, 688).

Further, the limitations indicated by Dr. Nelson's Statement are inconsistent with the medical evidence of record and Third Party Statement. After evaluation, Dr. Beidleman reported that Plaintiff did not appear to have functional limitations in her daily activities, could function independently, and could remember simple work instructions. (Tr. 445). Dr. Estock opined that Plaintiff was moderately limited in seven areas of functioning, but indicated no significant limitations in the remaining thirteen areas of functioning. (Tr. 461-462). Additionally, Mr. Parsons, with whom Plaintiff lived and served as a housekeeper, submitted a Third Party Function Report indicating that Plaintiff was able to shop for him, pay bills, manage her finances, had hobbies, socialized without problems, and was fairly capable of following instructions. (Tr. 235-37).  Accordingly, Plaintiff's arguments that the Appeals Council erred in finding Dr. Nelson's Medical Source Statement immaterial, and that the Council also erred by failing to include Dr. Nelson's Statement in the record are without merit.  *See* HALLEX § I-3-5-20, 1993 WL 643143 (SSA) (instructing the Appeals Council's to refrain from exhibiting evidence which is neither new, material, nor chronologically relevant).

For the reasons above, this court finds Dr. Nelson's Medical Source Statement immaterial, and, therefore, finds no reversible error in the Appeals Council's evaluation and exclusion of Dr. Nelson's Medical Source Statement.

**B.     Substantial Evidence Supports the ALJ's RFC Assessment**

Plaintiff argues that the ALJ's failure to refer to evidence from the Alabama Department of Vocational Rehabilitation Services within his written decision warrants reversal. The court disagrees. "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

A review of the record demonstrates that substantial evidence supports the ALJ's mental RFC finding that Plaintiff was able to perform simple, routine, repetitive tasks in a work environment with only occasional changes in setting and superficial interaction with others.[6] *See also, supra* at 11-12. The ALJ assigned significant weight to Dr. Beidleman's consultative examination report and to Dr. Estock's mental RFC assessment. (Tr. 45-46, 443-45, 461-63). Both Drs. Beidleman and Estock concluded that, despite limitations in her ability to adjust to work changes and interact with others, Plaintiff had the ability to understand, remember, and carry out simple instructions and the ability to make simple work-related decisions. (Tr. 443-45, 461-63). The ALJ also indicated that, under Dr. Nelson, Plaintiff's mental health treatment plan was conservative, and records described, at most, only moderate symptoms of anxiety, depression, or liable moods. (Tr. 44-45, 669-70, 681, 684, 688). Further, the ALJ referred to October 2010 treatment records from Plaintiff's primary care physician, which reported that Plaintiff's anxiety was "much improved" after psychiatric treatment. (Tr. 395).

Records from Plaintiff's vocational rehabilitation program do not establish that Plaintiff was disabled or had additional limitations not addressed by the ALJ. Plaintiff contends that these records show Plaintiff's limitations in basic mental demands of competitive work, as indicated

---

[6] On appeal, Plaintiff does not challenge the ALJ determination that Plaintiff was able to perform light work, but rather argues that the ALJ erred in not explicitly discussing the vocational rehabilitation records in his written decision. (Pl.'s Mem. at 7-13; *see e.g.,* Tr. 43) Notably, Plaintiff does not challenge the ALJ's assessment of her physical limitations, nor does she challenge the ALJ's credibility determination. (Pl's Mem. at 7-14).

13

by Plaintiff's problems following instructions, interacting with others, and handling work pressures. (Pl.'s Mem. 12). However, the ALJ narrowly tailored Plaintiff's RFC with respect to these limitations. (*See* Tr. 43.) The ALJ's RFC limited Plaintiff to simple, routine, and repetitive tasks, allowed for only superficial contact with coworkers and the public, and insisted on a stable a work environment. (Tr. 43). When completing the RFC assessment the ALJ considered Dr. Beidleman's examination records, indicating that Plaintiff's concentration and attention were within normal limits, Plaintiff's judgment was adequate, that Plaintiff did not indicate cognitive confusion, and could function independently. (Tr. 444-45). During examination by Dr. Beidleman, Plaintiff demonstrated that she was capable of following simple instructions. Upon request, Plaintiff counted backwards, performed simple subtraction, repeated numbers in sequence, and spelled the word "world" backwards and forwards. (Tr. 444). Further, the ALJ specifically considered Mr. Parson's statements showing Plaintiff was able to perform simple tasks as his housekeeper, including cooking, cleaning, laundry, driving, grocery shopping, and walking his dog. (Tr. 231, 233-35). Also, Mr. Parsons reported that Plaintiff socialized, and was capable of managing a savings account and paying bills. (Tr. 235-36). Notably, no physician -- treating, examining, or reviewing -- opined that Plaintiff suffers from functional limitations greater than those found by the ALJ.

Accordingly, the court finds that the ALJ properly analyzed the evidence of record, and his RFC assessment is supported by substantial evidence; therefore, his decision is due to be affirmed.

## VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this

determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

    **DONE** and **ORDERED** this August 5, 2015.

                                              **R. DAVID PROCTOR**
                                              UNITED STATES DISTRICT JUDGE